**IN THE COURT OF APPEALS OF IOWA**

No. 14-0879
Filed August 13, 2014

**IN THE INTEREST OF K.B.,**
   **Minor Child,**

**S.F., Father,**
   Appellant.
_____

Appeal from the Iowa District Court for Marion County, Steven Guiter, District Associate Judge.

A father appeals the termination of his parental rights to his son. **AFFIRMED.**

Blake D. Lubinus of Lubinus Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Edward W. Bull, County Attorney, for appellee.

Jessica Millage of Millage Law Firm, P.C., Des Moines, for mother.

Jared Harmon of Carr & Wright P.L.C., Des Moines, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., Tabor and Mullins, JJ.

**TABOR, J.**

A young father appeals the juvenile court order severing his parental rights to his one-year-old son. He contends the State did not prove a statutory ground for termination and argues maintaining his rights would be in the child's best interests. But primarily, the father seeks an additional six months to work toward reunification—pointing to an exhibit detailing his candid revelations concerning his anxiety and depression recently shared with a counselor from the Department of Veterans Affairs (VA) Hospital.

We affirm the juvenile court for the following three reasons. First, the evidence at the hearing, including the father's own testimony, supported the court's decision to terminate parental rights. Second, while the son, K.B., recognized his father during visits, their bond was not so strong that termination would be detrimental to the child's development. Third and finally, while the father has taken a positive step toward addressing his mental health, his conduct during the case shows his deep-seated difficulties are not likely to be resolved in time to regain custody of his son. Accordingly, we affirm the termination.

## I.  Background Facts and Proceedings

When K.B. was three months old, a child protection worker came to the home of his father, Shane, to investigate allegations the child had been exposed to domestic violence.[1]  K.B.'s eighteen-year-old mother, the victim of the abuse,

---

[1] The State charged Shane with multiple counts of domestic abuse assault, including strangulation, and first-degree harassment. He eventually entered an *Alford* plea to harassment and simple misdemeanor domestic assault. He was on probation at the time of the termination hearing. Under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970),

was experiencing serious mental health issues, including thoughts of suicide. The worker described K.B.'s parents as "young, immature, angry, and violent with one another." At that time, twenty-year-old Shane was living in a household with not only K.B. and K.B.'s mother, but with his eighteen-year-old fiancée and her daughter. Shane is also the father of that child, who was born just two weeks before K.B.[2] In the worker's view, the household dynamics were "a recipe for disaster."

K.B.'s parents consented to temporary removal. The Department of Human Services (DHS) placed K.B. in the home of Shane's aunt and uncle, where the child has stayed throughout the case. The court adjudicated K.B. as a child in need of assistance (CINA) on July 17, 2013, finding Shane had "anger management problems that prevent placement." On September 11, 2013, the court found K.B. could not be returned home due to the risk of abuse.

Despite recommendations from DHS that Shane receive mental health services, he did not obtain an evaluation until November 2013. In the interim, Shane's fiancée reported he had hit her. Shane did see a psychologist "a handful of times" in late 2013 and early 2014, but testified he discontinued the sessions "due to financial issues." He was prescribed medications but stopped taking them because of their side effects. Shane also started back with the National Guard during this time.

a defendant may consent to the imposition of a prison sentence without admitting participation in the crime.
[2] Shane's daughter is not the subject of this termination case.

In addition to his mental health issues, Shane was not diligent in visiting K.B. Shane's aunt had an "open-door" visitation policy, but Shane did not seize that opportunity. And even when Shane had a weekly standing appointment to see his son, the aunt often had to place reminder calls so Shane would be awake and prepared for the visits. Shane never progressed to semi-supervised, unsupervised, or overnight visits. The longest stretch he ever spent with K.B. was four hours.

On January 3, 2014, the State filed a petition to terminate Shane's parental rights. A month after the petition was filed and a month before the termination hearing, Shane met with a therapist from the VA for the first time. He testified until then he was not aware "the VA was still operational" in Knoxville. The court took evidence on the petition on March 12, 2014. At the conclusion of that hearing, the guardian ad litem recommended termination. In an order dated May 20, 2014, the court followed that recommendation and terminated Shane's parental rights.[3] Shane now appeals.

## II. Analysis of the Father's Arguments

In our de novo review,[4] we consider the father's claim the State did not prove by clear and convincing evidence a basis for termination under section 232.116(1), as well as his assertion the court should preserve his parental relationship under section 232.116(3). We also address his request for additional time.

---

[3] The court also terminated the parental rights of K.B.'s mother, but she is not a party to this appeal.
[4] *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

### A. Statutory Grounds

Termination requires proof of only one statutory ground. *In re L.H.*, 480 N.W.2d 43, 47 (Iowa 1992). In this case, the juvenile court properly determined the State's evidence supported termination under section 232.116(1)(h). That paragraph has four elements: (1) the child is three years old or younger; (2) the child has been adjudicated CINA; (3) the child has been removed from the parent's physical custody for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence the child cannot be returned to the parent's custody as provided in section 232.102 at the present time.[5] "Present time" means the period of the termination hearing. *See In re A.M.*, 843 N.W.2d at 111.

The DHS worker testified Shane engaged in services "very minimally, if at all." He did not take advantage of liberal visitation offered by his aunt, and continued to act violently toward his fiancée. As a result, the department did not consider K.B. to be safe in the father's care. Shane admitted during his testimony he was not ready to care for K.B.—agreeing with counsel's assertion: "right now as of today . . . you may not be the safest place for [K.B.]." The court properly terminated Shane's rights under paragraph (h).

---

[5] We defer to the juvenile court's factual findings, especially as to the credibility of witnesses, though we are not bound by them. *Id.* The State must offer clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "Clear and convincing" means we harbor no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

## B. Closeness of the Father-Son Bond

Shane contends termination was not warranted based on the bond he shares with K.B. Iowa Code § 232.116(3)(c). Shane testified K.B. was happy to see him walk through the door and called him "Da Da." While the one-year-old recognized his father, the father did not work to develop a deep relationship with K.B., spending only minimal time with him during that formative first year. The social worker testified K.B. was well-integrated into the family of his great aunt and uncle and they were willing to adopt him. Permanency for K.B. can only be achieved by terminating Shane's parental rights. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home")). We reject Shane's claim under section 232.116(3).

## C. Additional Time

Shane argues the juvenile court should have given him six additional months to access services and work toward reunification with K.B as allowed under Iowa Code section 232.104(2)(b).[6] The juvenile court may grant more time only if the judge specifically finds whatever prompted removal of the child will be resolved at the end of the six months. *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

Shane predicts his therapy through the VA will help him get a handle on his problems in six months. We are wary of that prediction. It is telling Shane did

---

[6] "An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

not start his therapy sessions until after the filing of the termination petition. And while his honesty with the VA psychologist and his resolve now to seek help are encouraging, his mental condition—laid bare—is concerning. Shane admitted being in "a constant state of paranoia." He also suffers from serious depression, feeling "no energy to do anything." He told the psychologist his anger was "starting to get out of control" and recounted waking up "head butting the wall." Shane discussed being abused as a child and engaging in self-harming behaviors as a teenager that left permanent scars, which he showed the VA psychologist.

Also in the VA interview, Shane denied responsibility for the incident of domestic violence that sparked K.B.'s removal. He told the psychologist: "the police came and arrested me because [K.B.'s mother] had a self-inflicted mark on her neck. I never touched her. I spent two weeks in jail because she lied." In our de novo review, we find Shane's failure to acknowledge his abuse of K.B.'s mother raises doubt that he could resume care of his young son in six months.

That doubt is amplified by the testimony of Shane's fiancée, who initially denied that Shane ever struck her. When she was reminded she was under oath, she acknowledged Shane has hit her, causing bruises, and that she has at times been afraid of him. Shane's history of domestic violence and lack of insight into the corrosive nature of that conduct indicates an ongoing risk to K.B.'s welfare.

Shane has not shown the kind of progress during the months that K.B. has been out of his care to merit prolonging the uncertainty. Our legislature has

constructed a time frame to balance a parent's efforts against the child's long-term best interests. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). In this case, that balance has reached the tipping point toward providing K.B. permanency.

**AFFIRMED.**